FILED

2012 JAN 24  AM 10: 29

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Veronika Kollar,

    Plaintiff,

v.

Thad M. Rhodes,

    Defendant.

Case No. 2:10-cv-505

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is denied.

**BACKGROUND**

In January 2008, Plaintiff Veronika Kollar arrived in Florida from Hungary. She was 24 years old and spoke almost no English. She had a job in Florida working for Peter Gede and his wife, Leasa Flannigan, who operated a corporate cleaning business called Elite Care. Mr. Gede is Hungarian and speaks fluent Hungarian; his wife, however, speaks almost no Hungarian. Kollar had been employed as a police officer in Hungary; she took a leave of absence from that job to come to the United States.

One of the businesses Elite Care cleaned was a Metro PCS store in Naples. The cleaning was all done after the store closed, often after midnight. Ms. Flannigan trained Kollar to clean the store, including taking the boxes at the rear of the store to the dumpster. There were two sets of boxes: those to the left of the store's rear door were to be discarded,

those to the right contained merchandise ready for shipping to customers and thus were not to be discarded. Something got lost in the translation, however, because Kollar apparently discarded all of the boxes, including those containing merchandise. The merchandise, as it turned out, was equipment for building and repairing cell phone towers. The total value of the merchandise lost was more than $347,000.

On February 15, 2008, the Metro PCS store manager contacted the Collier County Sheriff's Office to report an apparent theft. Defendant Officer Thad Rhodes responded to the call and investigated. He viewed surveillance video from several evenings showing Kollar carrying boxes out the back door, and interviewed Ms. Flannigan. Ms. Flannigan told Rhodes that she had trained Kollar to clean that store, but that it probably should have been her husband who trained Kollar because of Kollar's limited English proficiency. In addition, Ms. Flannigan said she "thought" Kollar understood that only the boxes on the left side of the door were to be discarded. The surveillance video showed that, on most occasions, Kollar carried boxes (whether empty or not) out the door and turned left, in the direction of the dumpster. On one or two occasions, however, and only when she was carrying boxes from the right side of the door—that is, boxes that contained merchandise—she turned right, apparently away from the dumpster. Kollar has submitted evidence, however, that the path to the dumpster going left was treacherous, and that, although a bit longer, going right led over a curb cut-out and sidewalk to the dumpster, and was a clearer path for someone carrying heavy items to the dumpster in the middle of the night.

After completing his investigation, Rhodes sent an arrest affidavit to the state attorney's office. In the affidavit, Rhodes made two statements that Kollar contends were misleading and knowingly false. First, Rhodes stated that he had watched the surveillance video, and that the video showed Kollar "while taking out the trash exit the back door and go to the left towards the dumpster. When taking out the boxes containing equipment belonging to Metro PCS, the suspect would exit the back door and proceed to the right." In fact, as noted, the video showed Kollar turning to the right on only one or two occasions. In addition, Rhodes averred that Ms. Flannigan told him that "her husband spoke and showed Kollar during her training what was to be left alone and what was to be thrown away." Again, Ms. Flannigan told Rhodes the opposite: that it was her and not her husband who trained Kollar, and that she "thought" Kollar understood what was to be thrown away and what was not. Rhodes did not provide either Ms. Flannigan's recorded statement or the video surveillance tapes to the state attorney's office along with his arrest affidavit, although the state attorney's office could have viewed the tapes or the recorded statement if they wished to do so.

On February 16, 2008, Kollar was driving one of Gede's cars when she was stopped for an expired license plate. She was arrested at that time and charged with driving without a valid license, because Florida law provides that a person residing in Florida must obtain a Florida driver's license within 30 days of their arrival in the state. Kollar had arrived in the United States on January 15, 2008. In early March, Kollar pled no contest to the license

3

violation and was fined and had her license suspended. In the meantime, the state attorney's office had commenced additional criminal proceedings against Kollar for grand theft, and she remained incarcerated.

Shortly after her arrest, and with the aid of an interpreter, Rhodes and another officer interrogated Kollar. She insisted that she thought all of the boxes were to be discarded. She consented to a search of her residence, which revealed only three empty Metro PCS boxes that she had been using as furniture. The surveillance tape showed Kollar taking these three empty boxes from the discard pile and placing them on a table before taking them with her as she was leaving.

In late May 2008, a woman who spoke Hungarian happened to be placed in Kollar's housing unit at the jail. She helped Kollar get a new defense attorney, and a few days after the defense attorney contacted the state attorney's office regarding Kollar's case, the state dropped all charges. Kollar was released from jail on June 3, 2008, nearly four months after her arrest.

The Complaint raises two counts against Rhodes: malicious prosecution under 42 U.S.C. § 1983 and state-law malicious prosecution. Kollar contends that Rhodes's false statements in the arrest affidavit caused the state attorney's office to commence prosecution. Rhodes argues in this Motion that he is entitled to qualified immunity, and that the federal malicious prosecution claim fails as a matter of law.

## DISCUSSION

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). When opposing a motion for summary judgment, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### A. Qualified Immunity

"Qualified immunity protects [government] officials from § 1983 suits for civil damages arising from the discharge of their discretionary functions 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Douglas Asphalt Co. v. Quore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008)

(quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). To benefit from qualified immunity, the public official must first prove that he was acting pursuant to his discretionary authority. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). The burden then shifts to the plaintiff to establish that a constitutional violation occurred and that the constitutional right alleged was clearly established at the time of the violation. Id.

There is no dispute that Rhodes was acting pursuant to his discretionary authority. Thus, the question is whether a constitutional violation occurred and whether the constitutional right was clearly established. The Court need not consider these questions in a particular order. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The facts of this case warrant consideration of the existence of a constitutional violation first.

**B.     Malicious Prosecution**

To establish a malicious prosecution claim under § 1983, Kollar must prove the elements of the state-law tort of malicious prosecution and that she suffered a violation of her 4th Amendment right to be free from unreasonable seizures. Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). The elements of a claim for malicious prosecution under Florida law include the commencement of a judicial proceeding against the plaintiff,

the bona fide termination of such proceeding in plaintiff's favor, the absence of probable cause for the proceeding, and malice on the part of the defendant. Id. (citing, inter alia, Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)).

### 1. Proper party

Rhodes first argues that he is not the proper party for a federal malicious prosecution claim because the state attorney's office, not Rhodes, made the decision to charge Kollar with grand theft. It is true that a police officer may not be liable for malicious prosecution when he did not "improperly influence[] the decision to prosecute" because he "fully apprise[d] the State Attorney of all relevant information known to [him], including that which weighed for and against [the suspect's] guilt." Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994). However, the allegations here are that Rhodes did improperly influence the decision to prosecute, by misrepresenting what the video surveillance showed and by misrepresenting what Ms. Flannigan told him about whether Kollar understood what she was supposed to be doing with the boxes. If the jury believes that Rhodes misled the state attorney's office into prosecuting Kollar, then he can be liable for malicious prosecution.

### 2. Arguable probable cause

Rhodes next argues that Kollar cannot establish a prima facie case of malicious prosecution, because there was at least arguable probable cause to arrest her for grand theft. Probable cause exists "when 'the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances, that the suspect has committed, is committing or is about to commit an offense.'" Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)). "Arguable probable cause exists when 'an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" Durruthy, 351 F.3d at 1089 (quoting Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001). "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). The inquiry into whether the officers' pre-arrest conduct was reasonable "depends on the facts of each case." Moreshead v. Ott, Civ. No. 08-80913, 2009 WL 5083425, at *6 (S.D. Fla. Dec. 23, 2009). "[C]ourts should be wary of scrutinizing the circumstances of the arrest through the 20/20 hindsight that comes after charges are dropped or the suspect is acquitted." Mills v. Town of Davie, 48 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999).

The parties' disagreement centers on whether Rhodes should have had reason to believe that Kollar possessed the intent to commit a theft before swearing out the arrest affidavit. Rhodes argues that he cannot be required to have evidence of (or even a belief in)

Kollar's specific intent, relying on the quote above from Scarborough, 245 F.3d at 1302-03. Kollar contends that Rhodes is misreading Scarborough, and that every federal Court of Appeals—including the Eleventh Circuit Court of Appeals—as well as the United States Supreme Court considers evidence of a suspect's mens rea to be part of the probable-cause inquiry for a specific intent crime.

In Provost v. City of Newburgh, 262 F.3d 146 (2d Cir. 2001), for example, the Second Circuit examined whether a police officer had probable cause to arrest someone for disorderly conduct. The court first noted the elements of the offense of disorderly conduct under state law, including "intent to cause public inconvenience, annoyance or alarm." Id. at 157 (quoting N.Y. Pen. L. § 240.20). The court then found that there was probable cause to arrest someone for disorderly conduct "only if a reasonable person in the same circumstances would have believed that [the suspect's] conduct satisfied all three components of § 240.20." Id. Judgment as a matter of law was therefore appropriate only if "'no reasonable jury could fail to find that [the officer] had probable cause to believe that [the suspect] acted with wrongful intent.'" Id. at 158 (quoting Gagnon v. Ball, 696 F.2d 17, 20 (2d Cir. 1982)).

Similarly, in Belcher v. Norton, 497 F.3d 742 (7th Cir. 2007), the Seventh Circuit concluded that a police officer could not establish probable cause to believe that suspects had committed a crime unless he believed that the suspects "had the requisite criminal mens rea to commit the crime . . . or the specific intent necessary to commit the crime . . . ." Id. at 749.

In Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir. 1995), the Eighth Circuit found that an arrest lacked probable cause because the officer "caused [the suspect's] arrest with the knowledge that [the suspect] lacked criminal intent." Id. at 476.

Scarborough is not to the contrary, despite the statement on which Rhodes relies. In Scarborough, the arresting officer determined that the suspects had the requisite intent to commit trademark infringement, the crime for which they were arrested. Scarborough, 245 F.3d at 1302. Thus, the arrest in that case was supported by arguable probable cause because the officer reasonably believed that the suspects had committed all of the elements of the offense for which they were arrested. Scarborough stands for the proposition that a police officer need not have evidence sufficient to support a conviction as to each element of the offense; it does not relieve a police officer of the duty to have a reasonable belief that the suspect committed each element of the offense for which suspect is arrested.

Here, there is a genuine issue of fact as to whether Rhodes could reasonably have believed that Kollar had the specific intent to commit theft. Summary judgment in Rhodes's favor is therefore inappropriate.

### 3. Qualified immunity

Rhodes is not entitled to qualified immunity at this stage. If the jury finds that he did not reasonably believe that Kollar had the requisite intent to commit theft, or that he knowingly misled the state attorney's office into arresting Kollar, then the law is clearly established that he violated Kollar's rights. At the very least, Kollar has raised genuine

issues of fact as to whether Rhodes is entitled to qualified immunity.

## CONCLUSION

Rhodes has failed to establish that he is entitled to qualified immunity on Kollar's claims as a matter of law. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 28) is **DENIED**.

Dated: January 24, 2012

Paul A. Magnuson
United States District Court Judge